UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
CAONABO VALDEZ,

                                        Plaintiff,                    08 Civ. 4424 (RPP)

          - against -                                      **OPINION AND ORDER**

THE UNITED STATES OF AMERICA and
JOSEPH MERCURIO, Officer,

                                        Defendants.

---------------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       Plaintiff Caonabo Valdez ("Plaintiff"), represented by counsel, initiated this action on May 12, 2008 by filing a two-count complaint ("Complaint") against the United States of America ("United States") and Defendant Joseph Mercurio ("Mercurio" or "Agent Mercurio"). The Complaint charged Defendants with constitutional tort claims and defamation claims based on Plaintiff's acquittal after a jury trial commencing on March 29, 2007. Defendants filed a motion to dismiss arguing, *inter alia*, that the Court lacks subject matter jurisdiction over Plaintiff's constitutional tort, Federal Tort Claims Act ("FTCA"), and defamation claims against the United States and Agent Mercurio in his official capacity. See Fed. R. Civ. P. 12(b)(1). With respect to any constitutional tort claims Plaintiff may be seeking against Agent Mercurio in his individual capacity, Defendant moves for summary judgment based on qualified immunity.

       For the following reasons, Defendants' motions are granted in their entirety and all of Plaintiff's claims are dismissed.

I.    **The Parties**

Plaintiff is a resident of the County of New York and a citizen of the State of New York. (Compl. ¶ 2.)  Special Agent Mercurio is a citizen of the State of New York and a Special Agent of the United States Drug Enforcement Agency ("DEA"), a governmental agency within the United States Department of Justice and existing under and by virtue of the laws of the United States. (Compl. ¶¶ 3, 4.)  The United States operates a unit of the DEA within the City of New York; specifically, the DEA's New York headquarters are located at 99 10th Avenue, New York, New York.  (Compl. ¶ 14.)  Defendant Mercurio is an employee of the DEA and, therefore, an employee of the United States government.  (Compl. ¶ 5.)   Mercurio is a Special Agent of the DEA and serves on the T32 taskforce, also known as the "REDRUM" unit.  (Compl. ¶¶ 16 – 19.)

II.   **Background**

On or about February 15, 2006, Agent Mercurio participated in a DEA investigation of a home invasion robbery—seeking drugs or drug proceeds—that took place on January 2, 2001. (Compl. ¶¶ 25 – 27.)  The robbery ("Gleason Avenue robbery") occurred at 1936 Gleason Avenue in Bronx, New York.  (Compl. ¶¶ 26 – 27.)  Agent Mercurio learned of the Gleason Avenue robbery through his interrogation of an individual named Maximo Guillen (a.k.a. "Amadito").  (Declaration of Joseph D. Mercurio, dated September 17, 2008 ("Mercurio Decl.") at ¶ 5.)  Amadito had been arrested and taken into federal custody in the summer of 2004; after his arrest, Amadito became a cooperating witness.  (Id.)  During an interview with Amadito, which occurred on October 1, 2004, Agent Mercurio learned that a police officer named "Caonabo" was one of several individuals involved in the Gleason Avenue robbery.  (Mercurio Decl. ¶¶ 5 – 7.)  After further investigation, Mercurio learned that an individual named Caonabo Valdez had been enrolled in the New York Police Department's Police Academy in 2000.  (Mercurio Decl. ¶ 8.)  In late 2005, Amadito

identified Plaintiff, through a driver's license photograph, as the "Caonabo" who had participated in the Gleason Avenue robbery.[1] (Mercurio Decl. ¶ 8.)

On December 27, 2005, Agent Mercurio testified before a federal grand jury in the Southern District of New York and presented the evidence that his unit had collected regarding the Gleason Avenue robbery. (Mercurio Decl. ¶ 13.) The grand jury returned a four-count sealed indictment[2] against eight individuals, including Plaintiff, Socrates Vizcaino, and "Tiko."[3] (Id.) Plaintiff was charged in Count I with conspiracy to commit robberies in violation of Section 371 of Title 18 of the United States code and, in Count II, with the substantive act of committing a robbery, both in violation of Sections 1951(b)(1) and (b)(3) of Title 18 of the United States Code. (Compl. ¶ 46; Mercurio Decl. ¶ 14.) In Count III, Plaintiff was charged with using, carrying, and brandishing a firearm, and aiding and abetting in the use, carrying, or brandishing of a firearm in furtherance of a crime, in violation of Section 924(c)(1)(A)(ii) of Title 18 of the United States Code. (Id.) On December 27, 2005, United States Magistrate Judge Douglas F. Eaton of the Southern District of New York issued an arrest warrant for Plaintiff based on the grand jury's indictment. On February 15, 2006, pursuant to the warrant, Agent Mercurio arrested Plaintiff for his alleged involvement in the actions charged in the indictment.[4] (Compl. ¶¶ 30 – 31.)

---

[1] On April 4, 2006—after Plaintiff's arrest but prior to his trial—Agent Mercurio interviewed Socrates Vizcaino, a defendant in the indictment and arrested for his alleged involvement in the Gleason Avenue robbery. (Mercurio Decl. ¶ 28 – 29.) Vizcaino corroborated the information supplied by Amadito, specifically that a Caonabo Valdez, who was Tiko's cousin and a police officer, was a participant in the Gleason Avenue robbery. (Mercurio Decl. ¶ 29.)

[2] In the grand jury indictment, Plaintiff was not charged with Count IV, unlawful, intentional, and knowing distribution of controlled substances and possession with intent to distribute controlled substances. (See December 27, 2005 Federal Grand Jury Indictment, in Declaration of Wendy H. Waszmer ("Waszmer Decl."), dated September 17, 2008, at Ex. B.)

[3] A superseding indictment was filed on January 8, 2007 against Plaintiff and the other seven defendants. (Mercurio Decl. ¶ 35.) The superseding indictment alleged the same three counts against Plaintiff. (Id.)

[4] Agent Mercurio, through his interviews with Amadito, also identified Plaintiff as a suspect in an attempted robbery of property located at 153rd Street, New York, New York that occurred in September 2000. (Mercurio Decl. ¶ 4.)

During the course of Defendant Mercurio's interrogation of Plaintiff regarding the Gleason Avenue robbery, Plaintiff maintained his innocence and informed Mercurio that he was the victim of identity theft by his cousin, Jacinto Polanco (a.k.a. "Tiko" and/or "Angel Diaz"), a known felon. (Compl. ¶¶ 38 – 41; Mercurio Decl. ¶ 21.) Plaintiff did not provide Agent Mercurio with information as to the whereabouts of Tiko. Amadito, the cooperating witness, had previously advised Agent Mercurio that Plaintiff's cousin "Tiko" was a participant in the Gleason Avenue robbery. (Mercurio Decl. ¶ 9.) Agent Mercurio states that he and the DEA did not learn of Tiko's whereabouts until on or about October 10, 2007—after Plaintiff's acquittal and release from custody on April 13, 2007. (Mercurio Decl. ¶ 9, 22.)

In mid-November of 2006, Agent Mercurio learned that the New York Police Department ("NYPD") had seized a gun involved in the Gleason Avenue robbery.[5] (Mercurio Decl. ¶ 25.) Mercurio also learned that the gun had already been destroyed by the NYPD. (Mercurio Decl. ¶ 26.)

Plaintiff's trial commenced on March 29, 2007. At the trial, a witness to and victim of the Gleason Avenue robbery, Malaisy Gil, testified that she had never seen the Plaintiff and that he was not a participant in the robbery. (Compl. ¶ 56 – 59.) Agent Mercurio asserts that, as of December 27, 2005—the date of Plaintiff's grand jury indictment—he had not interviewed Malaisy Gil, who was incarcerated out of state on unrelated charges, nor did he know that she could not identify Plaintiff as a suspect in the Gleason Avenue robbery. (Mercurio Decl. ¶¶ 12, 30.) After Gil was brought to New York (on or about January 31, 2007) in connection with Plaintiff's trial, she was shown a photo book which included photographs of the indicted defendants. (Mercurio Decl. ¶ 31.) Gil did not identify Plaintiff as a participant in the Gleason Avenue robbery. (Mercurio Decl. ¶ 31 –

---

[5] This gun had been seized in connection with an arrest unrelated to the case at hand. (Mercurio Decl. ¶ 25.) The investigator who informed Mercurio of the existence of the gun was searching for the New York Police Department's paper file regarding the Gleason Avenue robbery (which, ultimately, was never located). (Id.)

32.)  Prior to Gil's viewing the photo books on January 31, 2007, Agent Mercurio states that he was not aware Gil could not identify Plaintiff.  (Mercurio Decl. ¶ 32.)

At trial on March 29, 2007, the DEA's cooperating witness, Amadito, identified Plaintiff as a co-participant in the Gleason Avenue robbery.  (Waszmer Decl., Exhibit G, Trial Transcript ("Trial Tr."), at 187 – 90.)  On April 3, 2007, Socrates Vizcaino—one of the indicted defendants—also identified Plaintiff as participating in the Gleason Avenue robbery.  (Trial Tr., at 591 – 95.)

Plaintiff was acquitted of all of the aforementioned charges on April 13, 2007 and was subsequently released from federal custody.  (Compl. ¶ 48 – 49.)  He then timely filed an administrative tort claim with the DEA, dated August 14, 2007, which sought "damages and injury" against the DEA.  (Compl. ¶ 6 – 8.)  On November 14, 2007, the DEA denied Plaintiff's administrative claim.  (Compl. ¶ 9.)

### III. Legal Standards

#### a. Motion to Dismiss

With respect to Defendants' motion to dismiss the claims under the FTCA in Count I and the defamation claims against the United States and Agent Mercurio in Count II, Plaintiff has the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction over these claims.  See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000 (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)).  If the Court does not have subject matter jurisdiction, it cannot rule on these claims, and the claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  In determining whether subject matter jurisdiction exists, the Court may consider evidence outside of the pleadings.  Id.

#### b. Summary Judgment

Defendant Mercurio moves for summary judgment on any claims against him in his individual capacity for alleged violations of Plaintiff's constitutional rights.  Under Federal Rule of

5

Civil Procedure 56(c), summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005) (internal citations omitted). However, the party opposing summary judgment "must 'demonstrate more than some metaphysical doubt as to the material facts' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

## IV. Count I: Plaintiff's False Arrest and False Imprisonment Claims against the United States

In his claims for false arrest and false imprisonment under the Federal Tort Claims Act ("FTCA."), Plaintiff names the United States as a Defendant (Compl. ¶ 10.), specifically the United States Department of Justice Drug Enforcement Agency ("the DEA"), "an executive agency of the United States of America, existing under and by virtue of the Laws of the United States." (Compl. ¶ 4.) Plaintiff also names Agent Mercurio as a Defendant in his official capacity as "an employee and/or agent of the United States Department of Justice Drug Enforcement Agency." (Compl. ¶ 6.)

An action against a federal agency or federal officers in their official capacities is essentially a suit against the United States. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510

(2d Cir. 1994), citing to Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 1005 – 06 (1994) ("Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent.  *Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States*, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived [i.e. through the FTCA].") (emphasis added).

### a. Sovereign Immunity and The Federal Tort Claims Act ("FTCA")

The United States, as well as federal government agencies and federal officials acting in their official capacities, are immune from suit absent an express waiver of sovereign immunity.  See United States v. Mitchell, 463 U.S. 206, 212 (1983) ("[T]he United States may not be sued without its consent and . . . the existence of consent is a prerequisite for [subject matter] jurisdiction."); accord Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999) ("'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" (quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994))); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow for civil suits arising out of negligent acts of agents of the United States.  In enacting the FTCA, Congress waived the sovereign immunity enjoyed by the US with respect to claims arising from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346 (a).  A tort action under the FTCA is defined in accordance with the law of the state where the negligence occurred.  See Richards v. United States, 369 U.S. 1 (1962).

The FTCA explicitly excludes from its coverage "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

7

misrepresentation, deceit, or interference with contract rights . . . ." 28 U.S.C. § 2680 (h). However, this exception itself excepts claims "arising…out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" when these acts are committed by "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680 (h).[6]

### b. Allegations

Plaintiff asserts claims under the FTCA, specifically under the exception that allows claims for false imprisonment and false arrest by an investigative or law enforcement officer.[7] See 28 U.S.C. § 2680 (h). The Complaint alleges that Agent Mercurio, while acting within the scope of his employment by the United States (Compl. ¶ 20.), negligently disregarded "known existing exculpatory evidence" and caused Plaintiff to be falsely arrested and falsely imprisoned. (Compl. ¶ 74 – 75.) Specifically, Plaintiff contends that Defendants had knowledge of and access to "[t]he existence of a direct witness to the alleged robbery . . . ," but failed to conduct a "line-up" for the witness involving Plaintiff and failed to show the witness a "photo-array" involving Plaintiff prior to Plaintiff's indictment or trial. (Compl. ¶ 50 – 54.) This direct witness (Malaisy Gil) testified at trial that she had never before seen Plaintiff. (Compl. ¶ 56 – 59.) Plaintiff also alleges that Defendants intentionally destroyed a gun (Compl. ¶ 70 – 73) and disregarded Plaintiff's assertion,

---

[6] 28 U.S.C. § 2680 (h) defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

[7] Before an action may be filed under the Federal Tort Claims Act, an administrative claim must be presented to the federal agency employing the person whose act or omission caused the injury. Presentation of an administrative claim to the appropriate agency is a jurisdictional prerequisite to suit. 28 U.S.C. § 2675 (a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by . . . mail."); see generally McNeil v. United States, 508 U.S. 106 (1993). Plaintiff has satisfied this requirement. On or about August 13, 2007—within two years of his release from detention—Plaintiff filed a claim for damages and injury with the DEA. (Compl. ¶ 6 – 7.) On or about November 14, 2007, Plaintiff's claim was denied by the DEA and, within six months of the denial, Plaintiff brought this action against the Government. (Compl. ¶ 9 – 10.)

8

during interrogations, that his cousin, a known felon, had stolen his identity and "falsely presented himself to others as the plaintiff." (Compl. ¶ 38 – 41, 79.)

Plaintiff claims violations of his Fourth and Fourteenth Amendment rights (Compl. ¶ 99).

The Defendants argue that the FTCA claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). According to the Defendants, Plaintiff's claims of false arrest and false imprisonment are barred by the "discretionary function" exception to the FTCA's waiver of sovereign immunity and, therefore, the United States retains its sovereign immunity and cannot be subject to suit.[8] See 28 U.S.C. § 2680(a).

### c. Applicable Law

The "discretionary function" exception to the FTCA provides that Congress's authorization for damage suits against the United States

> shall not apply to…[a]ny claim…based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of…an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). In Berkovitz v. United States, 486 U.S. 531 (1988), and United States v. Gaubert, 499 U.S. 315 (1991), the Supreme Court established a two-part test for evaluating whether particular government conduct falls under the discretionary function exception. First, the acts alleged must involve an "element of judgment or choice" and are not compelled by statute or regulation. Berkovitz, 486 U.S. at 536; see Gaubert, 499 U.S. at 324 ("If the employee violates the mandatory regulation, there will be no shelter from liability because there is *no room for choice* and the action will be contrary to policy."). Second, the judgment or choice in question must have "involve[d] the permissible exercise of policy judgment." Berkovitz, 485 U.S. at 537, or, in other

---

[8] The Government also asserts that Plaintiff's claims arising out of the destruction of the gun by state authorities are barred by the doctrine of collateral estoppel because Plaintiff had a full and fair opportunity to litigate that issue during his criminal trial. (Trial Tr. 35-47.) To the extent Plaintiff alleges negligent investigation, the Government contends that the claim must be dismissed because no such cause of action exists in New York. Because the Defendants' motion to dismiss the FTCA claim for lack of subject matter jurisdiction is granted, the Court does not address the collateral estoppel or negligent investigation issues.

9

words, "can be said to be grounded in the policy of the regulatory regime . . . [and] susceptible to policy analysis." Gaubert, 499 U.S. at 325. However, the court need not inquire as to whether the agent "*actually balanced* economic, social, and political concerns in reaching its decision. The discretionary function exception applies where there is room for policy judgment. Thus, the relevant question is not whether an explicit balancing is proved but whether the decision is susceptible to policy analysis." In Re Joint E. & S. Dist. Asbestos Litig., 931 F.2d 31 (2nd Cir. 1989) (emphasis added, citations omitted).

### d. Discussion

Here, both prongs of Berkovitz-Gaubert test are satisfied, and the discretionary function exception of the FTCA bars Plaintiff's claims of false arrest and false imprisonment against the United States and Agent Mercurio in his official capacity.[9] First, there is no "federal statute, regulation, or policy [that] specifically prescribes a course of action" for Defendant Mercurio or the DEA to follow during an investigation. Berkovitz, 486 U.S. at 536 – 37; see Declaration of Michael A. Braun, dated September 16, 2008 ("Braun Decl."), at ¶ 8. Nor is there a there a statute, regulation, or policy requiring a certain method or means of identifying a suspect in a robbery. (Braun Decl. ¶ 8.) Decisions regarding the use of particular investigatory techniques such as a photo array, photo book, or line up are therefore within the discretion of a lead case agent and his supervisors. (Id.) Thus, the first prong of the Berkovitz-Gaubert test is satisfied because decisions

---

[9] Plaintiff also claims he suffered Fourth and Fourteenth Amendment violations during Agent Mercurio's investigations and that "federal officials do not possess discretion to commit [constitutional] violations." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Memo") at 5.) However, the United States has not waived sovereign immunity for constitutional tort claims and any claims relating to constitutional violations committed by the United States Government should be dismissed on subject matter jurisdiction grounds. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994), citing to Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 1005 – 06 (1994). Otherwise, "[p]laintiffs could argue that the Constitution, albeit indirectly and abstractly, controls the conduct or decisions of an officer in every circumstance. For example, one could argue that every decision an officer makes while conducting a search or an arrest is non-discretionary if it does not comply with the Fourth Amendment. If successful, these arguments would transform the discretionary function shield from steel to paper." McElroy v. United States, 861 F. Supp. 585, 593 (W.D. Tex., 1994.)

by the DEA and its case agents with regard to its use of investigatory methods are discretionary. See Pooler v. United States, 787 F.2d 868, 871 (3d Cir. 1986) ("When the sole complaint is addressed, as here, to the *quality* of the investigation as judged by its outcome, the discretionary function should, and we hold, does apply. Congress did not intend to provide for judicial review of the quality of investigation efforts."); McElroy v. United States, 861 F. Supp. 585, 591-92 (W.D. Tex. 1994) (holding that discretionary function exception applied to drug enforcement operation and that "negligent acts or omissions" of drug enforcement task force officers "during the preliminary investigation…were clearly guided by judgment and choices and not by an federal rule or policy"); Mesa v. United States, 837 F. Supp. 1210, 1213-14 (S.D. Fla. 1993) (investigatory functions of DEA officers "plainly within the discretionary function exception").

The second prong of the Berkovitz-Gaubert is also satisfied because the DEA's decisions in investigating the Gleason Avenue robbery involved policy considerations that the discretionary function exception was designed to shield.[10] The purpose of the discretionary function exception to the FTCA is to "'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . .'" Gaubert 499 U.S. at 324, quoting United States v. Varig Airlines, 467 U.S. 797, 814 (1984). Defendants argue that "a DEA agent's decision to conduct an investigation in a particular manner is subject to several policy considerations, such as maintaining secrecy, balancing the desire to protect the public with the goal of identifying all suspects, and avoiding tipping off targets of investigation," as well as "economic policy choices for allocating limited agency resources." (Braun Decl. ¶¶ 10, 12.) The judgments made as to what acts to perform in a federal investigation

---

[10] Some discretionary acts are not protected by the discretionary function exception because they are not "based on the purposes that the regulatory regime seeks to accomplish." Gaubert, 499 U.S. at 325. For example, if an official engaged in an act protected by the discretionary function exception drove an automobile in connection with that act and negligently caused an accident, the exception would not apply. "Although driving requires the constant exercise of discretion, the official's decisions in exercising this discretion can hardly be said to be grounded in regulatory policy." Id.

of criminal activity are the kinds of policy decisions that the discretionary function exceptions seeks to protect. See Pooler, 787 F.2d at 871 (stating that "discretionary function" exception applies where officer's actions "required consideration of the use and availability of potential informants, and of the competing use and availability of personnel who might be needed for surveillance"); Flax v. United States, 847 F. Supp. 1183, 1190-91 (D.N.J. 1994) (finding that "discretionary function" exception applies where agents had to "balance several competing concerns, all of which are grounded in considerations of public policy," such as conflicting interests of apprehending kidnappers and minimizing risk of harm to victim); Rourke v. United States, 744 F.Supp. 100, 103 (E.D. Pa. 1988), aff'd 909 F.2d 1477 (3rd Cir. 1990) ("[T]o the extent that [defendant] seeks compensation for having been erroneously arrested and charged due to flawed investigation, the discretionary function exception precludes the claims against the government in that the manner of conducting an investigation and the decision to seek an arrest warrant are the kind of 'quintessentially' discretionary activities for which sovereign immunity has not been waived.").

Here, Plaintiff's claims that Agent Mercurio was negligent and reckless in failing to interview Gil, conduct a line-up, show Gil a photo-array, or otherwise further investigate Plaintiff's claims of mistaken identity. These kinds of decisions about how to conduct investigations fall squarely within the discretionary function exception. Accordingly, Plaintiff's claims for false arrest and false imprisonment against the United States and Agent Mercurio in his official capacity are dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## V.   Count I: Plaintiff's Claims Against Agent Mercurio In His Individual Capacity
### a. Allegations

The Complaint does not specifically state claims against Agent Mercurio in his individual capacity. However, to the extent that claims of false arrest and false imprisonment against Agent Mercurio in his individual capacity pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403

U.S. 388 (1971) are arguable in Count I, Defendant Mercurio asserts that he is entitled to qualified immunity and moves for summary judgment on that basis.[11]

### b. Applicable Law

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established…constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The relevant inquiry is whether "the facts alleged show the officer's conduct violated a constitutional right" and if the violated "right was clearly established" at the time the actionable conduct took place. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court may exercise its sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand. Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

If a plaintiff adequately alleges a constitutional violation, and if the right at issue was clearly established, the court must then analyze the objective reasonableness of a defendant official's belief in the lawfulness of his actions. Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995) (applying the "objective reasonableness" standard stated in Anderson v. Creighton, 483 U.S. 635 (1987)). The qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. Anderson, 483 U.S. at 641. This objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Lennon v. Miller, 66 F.3d 416, 420 – 21 (2d Cir. 1995) ("[I]f the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.").

---

[11] In Bivens, the Supreme Court recognized a private right of action against federal officials in their individual capacities for alleged violations of constitutional rights. 402 U.S. 388 (1971).

Even a law enforcement officer who "reasonably but mistakenly conclude[s] that probable cause is present" is entitled to immunity. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

To promote greater confidence that the "fear of personal monetary liability and harassing litigation will [not] unduly inhibit officials in the discharge of their duties," Anderson, 483 U.S. at 638, the Supreme Court has emphasized that qualified immunity is "an *immunity from suit* rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The Supreme Court has "repeatedly…stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Saucier, 533 U.S. at 201. Thus, the court may find for Agent Mercurio on a summary judgment motion if "the evidence is such that, even when it is viewed in the light most favorable to [Plaintiff] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for [Agent Mercurio] to believe that [he was] acting in a fashion that did not violate a clearly established right." In re State Police Litigation, 88 F.3d 111, 123 (2d. Cir. 1996).

**c. Discussion**

Plaintiff's Bivens claims for false arrest and false imprisonment derive from his Fourth Amendment right to be free from unreasonable seizures, which includes the "right to remain free from arrest absent probable cause." Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002) (citing to Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).[12] There is no dispute that the rights at issue in this case—to be free from false arrest and from false imprisonment—were clearly established at the time of Plaintiff's arrest, trial, and incarceration. See, e.g., Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) ("The right not to be arrested without probable cause is a clearly

---

[12] The full text of the Fourth Amendment of the United States Constitution is: "The right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated and no Warrants shall issue, but upon probable cause, support by Oath or affirmation, and particularly describing the place to be searches or things to be seized." U.S. Const. Amend. IV.

14

established right."). Therefore, the issue to evaluate is the "objective reasonableness of [Agent Mercurio's] conduct in light of clearly established law and the information…[he] possessed." Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001) (quoting Anderson, 483 U.S. at 641).

The existence of probable cause is an absolute defense to these claims and affords Agent Mercurio qualified immunity from suit. See, e.g., Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff."); Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003) (noting that if there is probable cause, claims of false arrest and false imprisonment will fail). Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Caldarola v. Calabrese, 298 F.3d 156, 162 (citation omitted). An officer is entitled to qualified immunity even where "*arguable* probable cause" exists, i.e., "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera, 361 F.3d at 743 (emphasis added).

Here, a reasonable officer would have believed, based on the grand jury's indictment and the federal magistrate judge's issuance of the warrant for Plaintiff's arrest on the charges in the indictment, that there was probable cause to arrest Plaintiff, and therefore Agent Mercurio is entitled to qualified immunity. Moreover, at the time of Plaintiff's arrest, Amadito had identified both Plaintiff and his cousin Tiko to Agent Mercurio as participants in the Gleason Avenue robbery. (Mercurio Decl. ¶¶ 5 – 7, 9.) Agent Mercurio learned from Amadito that Plaintiff, whom Amadito referred to as "Caonabo," had worn NYPD gear during the robbery, and Agent Mercurio confirmed that an individual named Caonabo Valdez had been enrolled in the NYPD Police Academy.

15

(Mercurio Decl. ¶¶ 7 – 8.) Amadito also identified Plaintiff from a photograph obtained by the DEA from the New York State Department of Motor Vehicles as the "Caonabo" who participated in the Gleason Avenue robbery. (Mercurio Decl. ¶ 8.) On April 4, 2006—a year prior to trial—Plaintiff was identified by another defendant, Socrates Vizcaino, as a participant in the robbery. (Mercurio Decl. ¶¶ 29.) Thus, although Malaisy Gil testified that Plaintiff was not a participant in the robbery, this evidence was contradicted by Plaintiff's co-defendants Amadito and Vizcaino. Plaintiff does not dispute any of these facts. Therefore, no rational jury could fail to conclude that it was objectively reasonable for Agent Mercurio to believe that Plaintiff was a participant in the Gleason Avenue robbery. See In re State Police Litigation, 88 F.3d 111, 123 (2d. Cir. 1996). Agent Mercurio is entitled to qualified immunity because there is no genuine issue of material fact as to whether he had "arguable probable cause."[13]

Accordingly, any Bivens claims against Agent Mercurio are dismissed.

## VI. Count II: Plaintiff's Defamation Claim Against the United States

### a. Allegations

In his second cause of action, Plaintiff alleges that, prior to his arrest on February 15, 2006, Plaintiff was gainfully employed and had no prior arrests, convictions, or criminal record. (Compl. ¶¶ 83 – 84.) Plaintiff further alleges to have been "defamed, libeled and slandered in his good name and reputation in the community" as a result of his alleged false arrest and subsequent false imprisonment. (Compl. ¶¶ 89 – 90.) As a result of this alleged defamation suffered at the hands of Defendant United States Government, Plaintiff has been "unable to secure gainful employment"

---

[13] Plaintiff argues that Agent Mercurio should have pursued leads that would have uncovered purportedly exculpatory evidence. (See Compl. ¶ 50-75.) However, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); see also Baker v. McCollan, 443 U.S. 137, 145-46 (1979) (arresting officers not required to investigate claim of mistaken identity or lack of requisite intent). Nevertheless, at the time of Plaintiff's arrest, Agent Mercurio was not aware of the handgun in possession of the NYPD, the whereabouts of Plaintiff's cousin Tiko, or that victim Malaisy Gil could not identify Plaintiff as a suspect. (Mercurio Decl. ¶¶ 22-24.)

since his release from custody, (Compl. ¶ 94), and will "continue to be so hindered" from finding future employment. (Compl. ¶ 94.) Defendants contend that Plaintiff's defamation claim is barred by sovereign immunity and should be dismissed for lack of subject matter jurisdiction.

### b. Applicable Law

The FTCA explicitly excludes from its waiver of sovereign immunity "[a]ny claim arising out of . . . libel, slander, [or] misrepresentation . . . ." 28 U.S.C. § 2680 (h). Accordingly, the Supreme Court has stated that "a [defamation] suit against the United States under the Federal Tort Claims Act . . . could not be brought[] in the light of the exemption in that Act for claims based on defamation, see 28 U.S.C. § 2680(h) . . . ." Siegert v. Gilley, 500 U.S. 226, 234 (1991). In accordance with this Supreme Court precedent, federal courts in the Second Circuit have dismissed claims of defamation and libel brought against the United States. See, e.g., Asto v. Mirandona, 372 F.Supp. 2d 702, 710 (E.D.N.Y. 2005) (dismissing plaintiff's defamation claim for lack of subject matter jurisdiction); Hightower v. United States, 205 F.Supp. 2d 146, 153 (S.D.N.Y. 2002) (same).

### c. Discussion

Congress specifically excluded libel and slander from the FTCA, and this exception has been interpreted, by both the Supreme Court and federal courts in the Second Circuit, as also applying to defamation claims. Accordingly, Plaintiff's defamation claim against the United States and Agent Mercurio in his official capacity is dismissed for lack of subject matter jurisdiction.[14]

## VII. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Count I and II against the United States and Agent Mercurio in his official capacity is granted. Defendant's motion for summary

---

[14] The Supreme Court has found that "[d]efamation, by itself, is a tort actionable under the laws of most States, but *not a constitutional deprivation*." Siegert v. Gilley, 500 U.S. 226, 227 (1991) (emphasis added). As such, Plaintiff cannot bring a Bivens action in this case against Agent Mercurio for violation of his constitutional rights as a result of defamation because no constitutional deprivation occurred.

judgment on any <u>Bivens</u> claims against Agent Mercurio for false arrest and false imprisonment is also granted.

    IT IS SO ORDERED.

Dated:  New York, New York
        July 31, 2009

                                      Robert P. Patterson, Jr.
                                                U.S.D.J.